POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIV VELVART, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALARUM TECHNOLOGIES LTD., SHACHAR DANIEL, SHAI AVNIT, and CHEN KATZ,<br><br>Defendants. | Case No.<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Niv Velvart ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's

1

attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Alarum Technologies Ltd. ("Alarum" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Alarum securities between March 14, 2024 and August 26, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.    Alarum is a global Software as a Service ("SaaS") provider that offers web data collection solutions and a private internet browsing platform to a concentrated customer base.

2

3.    Alarum operates under a consumption-based business model, under which the Company charges customers for a given product or service based on how much they use it.  Specifically, the Company generates SaaS revenues "when customers subscrib[e] to [its] enterprise and consumer access platforms and [pay] for the packages they choose."  Given Alarum's concentrated customer base, the spending patterns of even a small number of customers can have a substantial impact on the Company's growth.

4.    Alarum has described itself as a "market leader" that has demonstrated "success in not only retaining, but also significantly expanding [its] engagements with existing customers."  However, unbeknownst to investors, Alarum was experiencing difficulties in retaining and expanding its customer engagements.  By June 2024 Alarum began seeing reduced customer spending that ultimately resulted in a 20% revenue decrease from the prior month.  Notwithstanding the foregoing, the Company consistently maintained at all relevant times that it "deliver[s] strong performance and value to [its] shareholders" and touted that its "revenues and operating cashflow reflect the dedication of [Alarum's] team and the robustness of [its] business model."

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to

disclose that: (i) the Company was less effective in retaining and/or expanding customer engagements than it had represented to investors; (ii) the foregoing would impair Alarum's ability to generate consistent revenue growth; (iii) accordingly, Alarum's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     On August 26, 2024, Alarum announced its results for the second quarter of 2024 and issued Q3 2024 guidance. Specifically, Alarum revealed that it was expecting Q3 2024 revenue of $7 million, far short of the $9.2 million revenue figure projected by analysts.

7.     That same day, Alarum hosted an earnings call with investors and analysts to discuss the Company's Q2 2024 results (the "Q2 2024 Earnings Call"), during which Alarum's Chief Executive Officer ("CEO") Defendant Shachar Daniel ("Daniel") attributed the disappointing Q3 2024 revenue guidance to the reduced customer spending Alarum began experiencing in June 2024.

8.     Market analysts were quick to comment on the Company's revelation. For example, on August 27, 2024, *Seeking Alpha* noted that Alarum's projected Q3 2024 revenue figure "represent[ed] over a 20% decline sequentially and only 3% growth [year-over-year]," and raised several issues with Alarum's disclosure

including, among other things, the lack of clarity in the Company's explanation for the drop in customer demand.

9.    On this news, Alarum's American Depositary Receipt ("ADR") price fell $6.77 per ADR, or 31.34%, to close at $14.83 per ADR on August 26, 2024.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Pursuant to Alarum's most recently filed Annual Report with the SEC, as of December 31, 2023, there were 59,681,632 of the Company's ordinary shares outstanding. Alarum's securities trade on the Nasdaq Capital Market ("NASDAQ"). Accordingly, there are presumably hundreds, if not thousands of investors in Alarum securities, some of whom undoubtedly reside within this Judicial District.

14.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.    Plaintiff, as set forth in the attached Certification, acquired Alarum securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.    Defendant Alarum is an Israeli corporation with principal executive offices located at 30 Haarba'a Street (P.O. Box 174) Tel Aviv, 6473926.   The Company's securities trade in an efficient market on the NASDAQ under the ticker symbol "ALAR."

17.    Defendant Daniel has served as Alarum's CEO and as a Director of the Company at all relevant times.

18.    Defendant Shai Avnit ("Avnit") has served as Alarum's Chief Financial Officer at all relevant times.

19.    Defendant Chen Katz ("Katz") has served as Alarum's Chairman at all relevant times.

20.    Defendants Daniel, Avnit, and Katz are collectively referred to herein as the "Individual Defendants."

6

21.    The Individual Defendants possessed the power and authority to control the contents of Alarum's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Alarum's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Alarum, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.    Alarum and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

23.    Alarum is a global SaaS provider that offers web data collection solutions and a private internet browsing platform to a concentrated customer base.

24.    Alarum operates under a consumption-based business model, under which the Company charges customers for a given product or service based on how much they use it.  Specifically, the Company generates SaaS revenues "when

customers subscrib[e] to [its] enterprise and consumer access platforms and [pay] for the packages they choose." Given Alarum's concentrated customer base, the spending patterns of even a small number of customers can have a substantial impact on the Company's growth.

**Materially False and Misleading Statements Issued During the Class Period**

25.    The Class Period begins on March 14, 2024, when Alarum issued a press release announcing the Company's Q4 2023 results. The press release stated, in relevant part:

> "I am proud to share the most successful quarter in the Company's history, as revenue, net profit and Adjusted EBITDA, all meaningfully exceeded results from the previous quarter. We delivered ***efficient operational execution*** following our decision, in the second quarter of 2023, to scale down other activities and focus on [the Company's wholly owned subsidiary NetNut Ltd.'s ("NetNut")] operations," said [Defendant] Daniel[.]
>
> \*\*\*
>
> [Defendant] Katz[] commented, "***The ongoing demonstration of financial stability, growth and operating performance supported the record financial results for the quarter and entire year. We successfully crystalized and executed our business strategy, transforming into a high-growth, profitable company, which we believe will create value for our shareholders***."[1]

26.    That same day, Alarum filed an Annual Report on Form 20-F with the SEC, reporting the Company's financial and operational results for the year ended

---

[1] All emphases included herein are added unless otherwise indicated.

December 31, 2023 (the "2023 20-F").  In providing an overview of the Company,

the 2023 20-F stated, in relevant part:

> At the end of 2022, we set as our leading goal to start our path towards profitability. As part of our focus on generating profitable revenues we decided in July 2023 to downscale our investment towards the consumer internet accesses segment of our business, operated under our wholly owned subsidiary, CyberKick. CyberKick's business model was based on acquiring new users to download and use our solutions. Following a careful analysis of prevailing market conditions, including the costs of acquiring such users, we identified that while this business model may provide a potential to generate future revenues, it requires significant resources and investments in advance that cause operational loss, resulting in non-profitable revenues. We therefore decided to scale down the operations of the internet access solutions for consumers, a decision that resulted in material reductions of expenses and headcount. We continue to maintain our products and the service only to current paying users, which allows us to generate revenue from past investments in acquiring such users, with minimal costs.

27.    Further, in discussing the Company's strategy, the 2023 20-F stated, in

relevant part:

> The [Automated Data Collection & Labeling ("ADCL")] Market is an inherent evolution for the growth of our business where we look forward to:
>
> ***
>
> - ***Growing our revenue base both outwards (i.e. cross-sale of ADCL Service Package to existing [IP Proxy Network ("IPPN"] customers) as well as upwards (i.e. upsizing existing IPPN service packages required to meet the increasing demand of customers who migrate to our ADCL Service Package*.**

28.    Finally, in discussing the Company's IPPN offering and business

model, the 2023 20-F stated, in relevant part:

We believe that the key to our historical and future business success is based on:

- *Our Fast, Secure and Automated IPPN Solutions* - providing comprehensive, anonymously acquired and geographically diverse data collection services for the creation of robust datasets for our customers[.]

29.    Appended to the 2023 20-F as exhibits were signed certifications pursuant to 18 U.S.C. § 1350 by Defendants Daniel and Avnit, attesting that "the information contained in the [2023 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

30.    Also on March 14, 2024, Alarum hosted an earnings call with investors and analysts to discuss the Company's 2023 results (the "Q4 2023 Earnings Call"). During the scripted portion of the Q4 2023 Earnings Call, Defendant Daniel stated, in relevant part:

From being on the path to profitability, we became profitable and proven our strategy to be the right one for the company. We announced today that we finished first quarter with revenues of $7.1 million and a record net profit that continued to grow reaching to a record of $1.7 million. The revenues for the first quarter represent not only a record quarter, but a quarter that surpassed the revenues generated from both business lines at the beginning of 2023 and demonstrated the strength of NetNut and our business.

\*\*\*

During 2023, we entered new market segments including AI-powered sales intelligence, fintech and AI recruiting markets in winning new leading customers across the board. Building on our network success, we began to expand our product offering in 2023, hiring new talents for

10

our research and development with the goal of delivering innovative and disruptive products to the data collection market.

\*\*\*

So to summarize, looking forward to 2024 with clear goals for continuing to grow our business. We plan on increasing market share in the IPPN vertical with penetration to new regions, engagement with high-profile customers and increased networks infrastructure globally. In addition, we aim to penetrate to the data collection and labeling market with our AI scraper and Web Unblocker distribution, for selling it to our current customers and target new customers.

31.     Further, when asked to discuss whether Alarum was experiencing any pressure to lower prices in response to competition, Defendant Daniel responded, in relevant part:

No, no. So basically, the answer is no. I don't -- the answer is no because, by the way, I don't think -- it's not that I don't think. I'm not aware to the fact that they decrease prices or they cut prices, maybe for one or two products, but not something significant. And we don't -- we are not identifying at this point of time, something that is happening in this field, something that I can say that has an impact. As always, customers are negotiating and want to get the best price, but not something different from one year ago or other period.

32.     On April 8, 2024, the Company issued a press release entitled "Alarum Estimates Record Quarterly Revenue of More Than $8.3 Million and All Time High Operating Cashflow of $3.2 Million for the First Quarter of 2024." The press release stated, in relevant part:

"We are proud to report preliminary numbers for yet another exceptional quarter, in which Alarum has achieved robust growth in both revenues and cash flow. ***This successful quarter reaffirms our dedication to driving innovation and excellence in everything we do.***

*We continue to witness a growing demand for our new products, particularly our recently launched Web Unblocker, with the onboarding of new customers and the positive feedback we have received*", said [Defendant] Daniel[.]

33.    On May 21, 2024, Alarum issued a press release announcing the

Company's Q1 2024 results.  The press release stated, in relevant part:

"I am thrilled to report another record quarter, marking continued growth and profitability for our company," said [Defendant] Daniel[.] "As **market leaders**, our dedication to innovation has never been stronger. This quarter, we introduced the 'Website Unblocker,' a product that has not only received positive feedback, but has also attracted new customers. We also launched our revolutionary 'AI Data Collector' product line, which features a user-friendly, no-code interface, that allows users to set up data collection in just minutes. We believe this will be a game-changer in the web data collection industry.

We remain agile, continuously planning for the future and advancing our roadmap with potential solutions for data analysis and insights. ***Our sustained growth, profitability, customer retention, and the successful introduction of innovative products, are propelling us towards the next milestones and achievements of our company***."

"Today we announced another record-setting quarter, highlighting our sustained growth and increasing profitability, which impacts all our financial Key Performance Indicators (KPIs)," said [Defendant] Avnit[.] "Our IFRS basic earnings per share (EPS) increased to $0.23 per American Depository Share (ADS), while our non-IFRS basic EPS rose to $0.45 per ADS. Our IFRS net profit was $1.4 million, And our non-IFRS net profit climbed to $2.8 million. The gap between the two, is primarily due to expenses resulting from the fair value increase of derivative financial instruments (warrants issued in 2019-2020) following an increase in our Company's share price. Our Adjusted EBITDA soared to an impressive $3.2 million – up significantly from just $0.1 million a year ago. We are thrilled to report that NetNut's upward trajectory continues robustly, with revenues reaching an all-time high, having surged by 139%. ***This growth is driven by the acquisition of new customers and a strong customer retention rate***

*(NRR), which now stands at 1.66. This demonstrates our success in not only retaining, but also significantly expanding our engagements with existing customers*."

34.    On May 24, 2024, Alarum hosted an earnings call with investors and analysts to discuss the Company's Q1 2024 results (the "Q1 2024 Earnings Call"). During the scripted portion of the Q1 2024 Earnings Call, Defendant Daniel stated, in relevant part:

> We are extremely proud to present our first quarter results, demonstrating continuous growth and successful execution in every aspect of our business, trends that continue with us into the second quarter. We started 2024, recording strong sales months resulted in our highest revenues to date. NetNut's revenues for the first quarter of 2024 totaled to $8.1 million, reflecting growth of 139% year-over-year compared to the first quarter of 2023.
>
> *The strong momentum is also demonstrated in our net retention rate, NRR. NRR represents the average growth rate for preceding 4 quarters compared to the equivalent period year-over-year of current customers only without the revenues generated from new customers by including upsells and cross-sells on one end and churn on the other end. In the first quarter of 2024, our NRR climbed to 1.66*.

35.    On July 10, 2024, the Company issued a press release entitled "Alarum Estimates Record Revenues of $17.2 Million and Record Operating Cashflow of $6.3 Million for the First Half of 2024."  The press release stated, in relevant part:

> "The preliminary results for the first half of 2024 *highlight our ability to deliver strong performance and value to our shareholders*," said [Defendant] Daniel[.] "*Our revenues and operating cashflow reflect the dedication of our team and the robustness of our business model. We remain committed to delivering innovative solutions and exceptional service to support the achievement of our future plans*.

Our strong cash position enables us to invest strategically in our future, to facilitate long-term success for Alarum and its stakeholders."

36.    The statements referenced in ¶¶ 25-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was less effective in retaining and/or expanding customer engagements than it had represented to investors; (ii) the foregoing would impair Alarum's ability to generate consistent revenue growth; (iii) accordingly, Alarum's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

37.    In addition, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Alarum to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Defendants' failure to disclose that the Company was witnessing reduced spending among its customers violated Item 303 because this issue represented a known trend or uncertainty that was likely to have a material unfavorable impact on Alarum's business and financial results.

## **The Truth Emerges**

38.    On August 26, 2024, Alarum issued a press release announcing the

Company's Q2 2024 results.  The press release revealed, in relevant part:

**Financial Outlook**

"Alarum ended Q2 2024 with growing revenues, enhanced
profitability, strong cash generation and a solid balance sheet, which
provides the flexibility and resources to invest in the areas that will
drive future growth," said [Defendant] Avnit[.] "Today, for the first
time, we are providing quarterly guidance, as we aim to enhance
transparency. We anticipate Q3 2024 revenue to demonstrate year-
over-year growth, and in fact, NetNut revenues are expected to cross
the full-year 2023 revenue-bar of $21.2 million within the first nine
months of 2024. ***Q3 2024 revenues are estimated at $7 million ±3%
and Adjusted EBITDA for Q3 2024 is expected to range from $0.8 to
$1.0 million***."

39.    That same day, Alarum hosted the Q2 2024 Earnings Call, during which

the Company provided further explanation for its disappointing Q3 2024 guidance.

Specifically, when asked "why in the third quarter would revenue drop so steeply"

and "what's causing [the revenue drop]," Defendant Daniel responded, in relevant

part:

[S]o the [Net Revenue Retention ("NRR")] indicator that we're using,
and not only us, it's an industry standard, is basically make
four measurements. It compares four quarters to the previous four quarters,
then moving one quarter back, doing the same, and another two times,
meaning it takes the big data into the calculations.

\*\*\*

So, okay, so even if you see a drop or a dip of sequential quarters or
quarter-over-quarter, it doesn't say that you will see the impact directly

in the NRR because the NRR is, as I mentioned, measuring four times, and four quarters versus four quarters, four times. Now for the second part of your question, so as I mentioned in my pitch just a few minutes ago, in the third quarter, *we experienced a kind of slowdown for some of our customers* which basically made, as we just mentioned, made the revenues to go a little bit back from Q2 to Q3, but from the other side, after we saw this slowdown in May, so in June, we started to see the positive growth trends of the company going back directly on track and in July we see a growth versus June and we projected August -- we see that August is going, and we're about to finish August in a few days, is going to show also a growth comparing to July. *But it didn't come back to the same point that May was*.

***

*So in the middle of [the quarter] some of our customers slow[ed] down their usage and that's what we call a drop or a kind of a dip that made them to renew or not to renew in the next month, meaning in June, for example, or in July. Even if they renewed, they bought a much smaller packages from bandwidth perspective*. And this is why you see these revenues are going back.

40.    Market analysts were quick to comment on the Company's revelation.

For example, on August 27, 2024, *Seeking Alpha* raised several issues with Alarum's

disclosure including, among other things, the lack of clarity in the Company's

explanation for the drop in customer demand.  Specifically, *Seeking Alpha* reported,

in relevant part:

Alarum's [. . .] Q2 results were reasonably solid, although guidance for the third quarter was extremely soft. *Analysts had been projecting $9.2 million revenue in Q3, but Alarum is now guiding to $7 million. Alarum's guidance also implies significant margin compression on the back of lower revenue*.

Alarum has reportedly seen weak demand from some customers, which began in June. While the company has returned to sequential growth,

Alarum's monthly revenue run rate remains below May's levels. ***Alarum has not given a clear reason for this, but it appears that some of the company's larger customers have reduced spend or shifted spend to competitors***.

\*\*\*

Alarum generated $8.9 million in revenue for the second quarter, $8.7 million of which was from NetNut. Total revenue increased 27% YoY, while NetNut revenue was up 72%. This is a significant drop in growth from prior quarters, ***which appears to have been driven by weak demand in June***.



As a result of recent weakness, Alarum now only expects $7 million revenue in the third quarter, ***representing over a 20% decline sequentially and only 3% growth YoY***. Given the company's commentary regarding monthly revenue, this guidance appears to be conservative. ***Revenue in June was down around 20% compared to May***, although returned to sequential growth in July and August. Despite this, August's revenue has not returned to May's level.

***It is not really clear why Alarum would have seen a drop in demand from an end market exposure perspective. This could imply that***

*competition or customer-specific weakness caused the drop in revenue*.

***

Alarum has stated that it continues to increase its IPPN market share, *although the company's Q3 struggles are likely the result of lost market share*.

41.    On this news, Alarum's ADR price fell $6.77 per ADR, or 31.34%, to close at $14.83 per ADR on August 26, 2024.

42.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

43.    During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

purchased or otherwise acquired Alarum securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Alarum securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Alarum or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and

securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Alarum;

- whether the Individual Defendants caused Alarum to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Alarum securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Alarum securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Alarum securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as

Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

53.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Alarum securities; and (iii) cause Plaintiff and other

members of the Class to purchase or otherwise acquire Alarum securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Alarum securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Alarum's finances and business prospects.

57. By virtue of their positions at Alarum, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each

Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Alarum, the Individual Defendants had knowledge of the details of Alarum's internal affairs.

59.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Alarum.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Alarum's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Alarum securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Alarum's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Alarum securities at artificially inflated prices and relied upon the price of the securities, the integrity of

the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60.    During the Class Period, Alarum securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Alarum securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Alarum securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Alarum securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with

their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

63.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     During the Class Period, the Individual Defendants participated in the operation and management of Alarum, and conducted and participated, directly and indirectly, in the conduct of Alarum's business affairs.  Because of their senior positions, they knew the adverse non-public information about Alarum's misstatement of income and expenses and false financial statements.

65.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Alarum's financial condition and results of operations, and to correct promptly any public statements issued by Alarum which had become materially false or misleading.

66.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Alarum disseminated in the

marketplace during the Class Period concerning Alarum's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Alarum to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Alarum within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Alarum securities.

67.    Each of the Individual Defendants, therefore, acted as a controlling person of Alarum. By reason of their senior management positions and/or being directors of Alarum, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Alarum to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Alarum and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Alarum.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 14, 2025                    Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

jalieberman@pomlaw.com
ahood@pomlaw.com

THE LAW OFFICE OF JACOB SABO
Jacob Sabo
22a Mazzeh Street
Tel-Aviv, Israel
Telephone: (++972) 39070770

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.      I, _____Niv Velvart_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Alarum Technologies Ltd. ("Alarum") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Alarum securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Alarum securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Alarum securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


Executed _____28.01.2025_____
                    **(Date)**



                                                              _____
                                                              **(Signature)**


                                                              _____Niv Velvart_____
                                                              **(Type or Print Name)**

**Alarum Technologies Ltd. (ALAR)**                                        **Niv Velvart**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 6/18/2024 | 370 | $26.9900 |
| Purchase/Acquisition | 7/1/2024 | 1 | $38.8900 |
| Purchase/Acquisition | 7/1/2024 | 1 | $38.8800 |
| Purchase/Acquisition | 7/10/2024 | 500 | $35.0000 |
| Purchase/Acquisition | 7/10/2024 | 108 | $32.5700 |
| Purchase/Acquisition | 7/12/2024 | 47 | $31.2700 |
| Purchase/Acquisition | 7/16/2024 | 499 | $27.3900 |
| Purchase/Acquisition | 8/5/2024 | 357 | $21.9800 |
| Sale | 4/15/2024 | (270) | $25.8600 |
| Sale | 5/28/2024 | (320) | $36.9700 |
| Sale | 7/2/2024 | (376) | $42.4600 |
| Sale | 7/10/2024 | (560) | $37.4500 |